AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
NOV 0 7 2017
CLERK U S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

LG Cellular Phone
IMEI No. 35213093810488

Case No. **17MJ4194**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, which is incorporated by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952 and 960 | Importation of methamphetamine |

The application is based on these facts:
See Affidavit of Special Agent Felix Trevino, which is hereby inorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Felix Trevino, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/7/17

*Judge's signature*

City and state: San Diego, CA

HON. BERNARD G. SKOMAL, Magistrate Judge
*Printed name and title*

## AFFIDAVIT

FELIX TREVINO, being duly sworn, states:

### INTRODUCTION

1. This affidavit supports applications for search warrants to forensically examine three cellular phones seized on September 29, 2017 from Yerithza Arianna CABAUATAN at the San Ysidro Port of Entry (hereinafter, the **Target Telephones**), as described in Attachments A-1, A-2, and A-3, incorporated herein.

2. The **Target Telephones** were seized from CABAUATAN after Customs and Border Protection Officers found approximately 46.14 kilograms of methamphetamine inside the car CABUATAN attempted to drive into the United States from Mexico. As described below, I believe that the **Target Telephones** were used by CABAUATAN to communicate with co-conspirators before and during the drug smuggling event. CABAUATAN has been charged with importing methamphetamine, in violation of 21 U.S.C. § 952 and 960. *See* Criminal Case No. 17CR3290-BEN. I believe probable cause exists to believe that the **Target Telephones** contain evidence (specified in Attachments B-1, B-2, and B-3, incorporated herein) related to violations of that crime. The **Target Telephones** are currently in the possession of HSI Special Agents in San Diego, California.

3. The information contained in this affidavit is based on my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Telephones**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only

contains those facts believed to be necessary to establish probable cause. All dates and times below are approximate.

### EXPERIENCE AND TRAINING

4. I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since March 2003. Before then, I served as a Special Agent with the United States Customs Service since 1998, after serving as a U.S. Border Patrol Agent since 1996. I am currently assigned to the Airport and Air Smuggling Group with HSI, where my duties include conducting investigations of criminal violations relating to the smuggling and transportation of controlled substances. In the course of my duties in this assignment and in previous assignments, I have participated in more than 150 narcotics-related investigations as a case agent and in supporting roles. Many of those cases resulted in the arrest of persons for drug-related offenses, including the importation of controlled substances. I have conducted surveillance and participated in the execution of search warrants in drug trafficking investigations. I have interviewed numerous defendants, witnesses and informants while conducting drug trafficking investigations. Through those interviews I have gained a working knowledge and insight into the normal operational habits of narcotics traffickers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego, CA international ports of entry.

5. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. I have also witnessed such practices while working in an undercover capacity during the course of several investigations. Conspiracies involved in the

smuggling and trafficking of narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

6. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and

posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

 f. Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

 g. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones such as emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

 h. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, I know based upon my training, education, and experience in investigating these conspiracies that searches of cellular telephones yields evidence:

a. tending to indicate efforts to import controlled substances into the United States from Mexico;

b. tending to identify other accounts, facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to import controlled substances into the United States from Mexico;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to import controlled substances into the United States from Mexico;

d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the target cellular/mobile telephone; and

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

8. Based upon the following information, I believe there is probable cause to believe that currently located within the **Target Telephones** there is evidence, fruits and/or instrumentalities of importation of methamphetamine, in violation of Title 21 U.S.C. § 952, 960.

## **PROBABLE CAUSE**

9. On September 29, 2017, at approximately 2:35 p.m., CABAUATAN drove into the United States from Mexico at the San Ysidro Port of Entry. CABAUATAN was driving a Mitsubishi Eclipse convertible. CABAUATAN told the Customs and Border Protection Officer at primary inspection that she owned

the car, that she was traveling to San Diego, and that she only had personal baggage to declare. The primary officer opened the trunk of CABAUATAN's convertible. The officer noticed that the space designed to house the convertible top appeared to be tampered with. Upon closer inspection, the officer found several bags containing what appeared to be crystal rocks. At secondary inspection, officers discovered 50 packages of what appeared to be a controlled substance; the substance field-tested positive for methamphetamine (totaling 46.14 kilograms). During further inspection, a GPS tracking device was found inside the dashboard of CABAUATAN's car.

10. In a post-*Miranda* interview, CABAUATAN denied knowledge of the drugs. She claimed she bought the car a month-and-a-half before. She admitted she did not lend the car to anyone and had the only key. She stated she arrived in Tijuana about 8 hours prior to visit her boyfriend.

11. At the time of her arrest, CABAUATAN was in possession of the **Target Telephones**.

12. Based on my training and experience, I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Telephones** which may identify other persons involved in alien smuggling activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the drug smuggling activity of CABAUATAN, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Telephones**.

13. Based upon my experience and investigation in this case and in other cases, I believe that CABAUATAN used the **Target Telephones** to facilitate the importation of methamphetamine and that the **Target Telephones** contain evidence of this criminal activity in the form of recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of the illegal activity committed by CABAUATAN continue to exist on the **Target Telephones**.

14. Based on my training and experience, I am also aware that it can take weeks, often months, to prepare and plan to smuggle controlled substances into the United States from Mexico. Accordingly, this search warrant seeks approval to search for evidence of violations of 21 U.S.C. §§ 952 and 960 from June 29, 2017 to and including September 29, 2017.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the

network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, the **Target Telephones** will be subjected to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

//
//
//
//
//
//

18. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

Felix Trevino, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this _____ 7 _____ day of November _____, 2017.

The Honorable Bernard G. Skomal
United States Magistrate Judge

## ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:
    1 LG Phone
    IMEI No. 35213093810488

**Target Telephone 1** is currently located at the Homeland Security Investigations Evidence Vault 880 Front Street, Suite 3200, San Diego, CA 92101.

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:
    1 Alcatel One Touch Cellular Phone
    IMEI No: 0144700001179067

**Target Telephone 2** is currently located at the Homeland Security Investigations Evidence Vault 880 Front Street, Suite 3200, San Diego, CA 92101.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:
    1 Kyocera Cellular Phone
    IMEI NO. 014016005541990

**Target Telephone 3** is currently located at Homeland Security Investigations Evidence Vault 880 Front Street, Suite 3200, San Diego, CA 92101.

## ATTACHMENT B-1

### ITEMS TO BE SEIZED

Authorization to search **Target Telephone 1** described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Telephone 1** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 29, 2017 to and including September 29, 2017:

   a. tending to indicate efforts to deliver controlled substances from Mexico to the United States;

   b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to deliver controlled substances from Mexico to the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;

   d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, **Target Telephone 1**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

## ATTACHMENT B-2

## ITEMS TO BE SEIZED

Authorization to search **Target Telephone 2** described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Telephone 2** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 29, 2017 to and including September 29, 2017:

a. tending to indicate efforts to deliver controlled substances from Mexico to the United States;

b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to deliver controlled substances from Mexico to the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;

d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, **Target Telephone 2**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

## ATTACHMENT B-3

## ITEMS TO BE SEIZED

Authorization to search **Target Telephone 3** described in Attachment A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Telephone 3** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 29, 2017 to and including September 29, 2017:

   a.   tending to indicate efforts to deliver controlled substances from Mexico to the United States;

   b.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to deliver controlled substances from Mexico to the United States;

   c.   tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;

   d.   tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;

   e.   tending to identify the user of, or persons with control over or access to, **Target Telephone 3**; and/or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.